IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. `13-CV-1413-JAR-KMH` |
| BATSON PROPERTIES, L.P., PARAGON SERVICES, INC., and PARAGON PROPERTIES, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR CERCLA
COST RECOVERY, SUBROGATION, AND DECLARATORY RELIEF**

Plaintiff AIG Specialty Insurance Company (formerly known as Chartis Specialty Insurance Company, formerly known as American International Specialty Lines Insurance Company) ("AIG Specialty") files this complaint against Defendants Batson Properties, L.P., Paragon Services, Inc. (formerly known as Paragon NDT & Finishes, Inc.) and Paragon Properties, LLC (collectively, "Defendants"), and would show as follows:

**NATURE OF THE ACTION**

1.     This is a civil action for cost recovery, subrogation, and declaratory judgment under Sections 107(a), 112(c)(2), and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9601-9675.

2.     AIG Specialty insures (i) 3P Processing, Inc., (ii) 3P Manufacturing, Inc., and (iii) 3P Holdings, Inc. (collectively, "3P"), as well as certain former owners or operators of a facility located in Wichita, Kansas known as the Air Capitol Plating Site (the "ACP Site"). 3P Processing, Inc. is the current owner and operator of the ACP Site. 3P Manufacturing, Inc. is

- 1 -

investigating contamination of groundwater beneath the ACP Site and downgradient properties to the south and southeast consistent with the requirements of the Kansas Department of Health and Environment ("KDHE").  3P Holdings, Inc. is a related entity to 3P Processing, Inc. and 3P Manufacturing, Inc.  Hazardous substances detected in groundwater beneath the ACP Site and the downgradient properties under investigation include, among others, the solvent trichloroethylene ("TCE") in concentrations exceeding applicable regulatory standards.

3.      In 1999, Cherokee Thayer, LLC ("Cherokee") purchased Cleanup Costs Cap Policy no. 2673128 (the "Policy") from American International Specialty Lines Insurance Company, now known as AIG Specialty Insurance Company, with effective dates of December 31, 1998 to January 4, 2035.  3P Manufacturing, Inc., 3P Processing, Inc., and 3P Holdings, Inc. are insureds under the Policy.

4.      Defendants own and operate a facility northwest of the ACP Site known as the "Batson/Paragon Site."  During the time Defendants have owned and operated the Batson/Paragon Site, spills and releases of hazardous substances, including TCE, occurred that contaminated soil and groundwater at and beneath that site.  For years, groundwater contaminated by hazardous substances released from the Batson/Paragon Site has flowed toward, beneath, and downgradient of the ACP Site.

5.      The groundwater beneath the ACP Site and downgradient properties is contaminated by hazardous substances, including TCE, released from the Batson/Paragon Site. For years, AIG Specialty's insureds under the Policy, including 3P, have responded to the hazardous substance contamination at the ACP Site and downgradient properties in accordance with the requirements of KDHE.

6.      AIG Specialty's insureds under the Policy, including 3P, have incurred necessary costs consistent with the National Contingency Plan ("NCP"), 40 CFR Part 300 *et seq*., in

COMPLAINT

response to releases of hazardous substances from the Batson/Paragon Site.

7.     AIG Specialty itself has incurred, and/or incurred on its insureds' behalf, necessary costs for investigation, removal, and/or remedial actions substantially consistent with the NCP in response to the release of hazardous substances from the Batson/Paragon Site.  Based on its payments to and/or on behalf of its insureds for response costs, AIG Specialty is subrogated to the rights of its insureds, including 3P, under the Policy.

8.     Within the meaning of CERCLA, Defendants are the owners and operators of a facility where hazardous substances have been disposed, i.e., released to the environment.  The released hazardous substances have contaminated groundwater under the ACP Site and downgradient properties, and AIG Specialty and 3P have incurred necessary response costs as a result of the release of hazardous substances from Defendants' facility.  Accordingly, by this action, AIG Specialty, both for itself and, alternatively, as subrogee of its insureds under the Policy, seeks recovery of response costs from Defendants.

9.     By this action, AIG Specialty also seeks a declaratory judgment that Defendants are liable for future response costs or damages.

## JURISDICTION AND VENUE

**A.    Jurisdiction.**

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and Sections 107(a), 112(c), and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a), 9612(c), and 9613(b) (CERCLA grant of jurisdiction).  In addition, the Declaratory Judgment Act (28 U.S.C. § 2201) and Section 113(g)(2) of CERCLA (42 U.S.C. § 9613(g)(2)) authorize this Court to grant AIG Specialty declaratory relief.

**B.    Venue.**

11.    Venue lies in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. §

COMPLAINT

- 3 -

9613(b), because the properties at issue are located within this judicial district, and the release or damages occurred in this judicial district.

## PARTIES

12.     Plaintiff AIG Specialty is an Illinois corporation with its principal place of business in the State of New York.  AIG Specialty was formerly known as American International Specialty Lines Insurance Company and, subsequently, Chartis Specialty Insurance Company. Effective November 1, 2013, Chartis Specialty Insurance Company became AIG Specialty Insurance Company.

13.     Defendant Batson Properties, LP ("Batson") is a Kansas limited partnership with its principal place of business in the State of Kansas.  Batson owns the Batson/Paragon Site real property located at 1029 S. West Street and formerly owned the Batson/Paragon Site real property located at 1015 S. West Street, in Wichita, Kansas.  Batson Properties, LP can be served through its registered agent for service, Craig K. Batson, at 347 Wind Rows Lake Drive, Goddard, Kansas 67052, or wherever he may be found.

14.     Defendant Paragon Services, Inc. is a Kansas corporation with its principal place of business in the State of Kansas.  Paragon Services, Inc., formerly known as Paragon NDT & Finishes, Inc., has operated an aviation and aerospace parts finishing and inspection business at the Batson/Paragon Site property located at 1015 S. West Street since approximately 1980 and is the current operator.  Paragon Services, Inc. can be served through its registered agent for service, Brock T. Elliott, at 1015 S. West Street, Wichita, Kansas 67213, or wherever he may be found.

15.     Defendant Paragon Properties, LLC is a Kansas limited liability company with its principal place of business in the State of Kansas.  Paragon Properties, LLC, is the current owner of the Batson/Paragon Site property located at 1015 S. West Street.  Paragon Properties, LLC can

COMPLAINT

be served through its registered agent for service, Brock T. Elliott, at 1015 S. West Street, Wichita, Kansas 67213, or wherever he may be found.

16.     Defendants Paragon Services, Inc. and Paragon Properties, LLC are herein collectively "Paragon."

## FACTUAL BACKGROUND

**A.     ACP Site operations.**

17.     The ACP Site, as defined by KDHE, comprises approximately 6.3 acres of property located at and around 1702 Knight Avenue in Wichita, Sedgwick County, Kansas.  It includes a parts processing facility on what is now 1702, 1720, 1728, and 1736 Knight Avenue and 1703, 1719, and 1727 S. Leonine Street, a parking area north of this facility, and warehouse buildings west of the facility at 1731 and 1737 Knight Avenue.  The ACP Site has been operated as an aircraft and aerospace parts processing, plating, and painting facility since approximately 1978 by various operators, beginning with Air Capitol Plating, Inc. ("ACP").  3P Processing, Inc. is the current operator of the ACP Site.

**B.     Batson/Paragon Site operations and releases of hazardous substances.**

18.     The Batson/Paragon Site, as defined by KDHE, comprises approximately 15 acres of property in Wichita, Kansas with addresses including, without limitation, 1029 S. West Street and 1015 S. West Street.  The site is located approximately 3,200 feet northwest of the ACP Site and has been operated as a multi-tenant industrial park since the 1940s.

19.     Batson and its predecessor entities, including without limitation Batson Heat Treating, Inc., Batson Investments, Inc., and Batson Properties, leased the property at 1015 S. West Street to Paragon beginning in approximately 1980 and continuing thereafter until Batson sold the property to Paragon Properties, LLC in 2013.  On information and belief, Batson succeeded these predecessor entities and assumed all of their assets and liabilities.

COMPLAINT

20.    Paragon's operations have included parts processing, finishing and testing, and related services for the aircraft and aerospace industry.  Paragon purchased, stored, and used TCE as a part of its operations from 1980 through at least approximately 1989, including operation of a vapor degreaser using TCE and a solvent still for parts cleaning and related uses.

21.    On information and belief, Paragon spilled TCE in the course of its operations at the site, resulting in contamination of soil and groundwater.  One such spill occurred in October 1988, when TCE was released from Paragon's reportedly idled 115-gallon capacity solvent still. This spill was not reported to KDHE until 1989 after a sample from a groundwater well in the Batson industrial park indicated TCE contamination concentrations exceeding applicable regulatory standards.  Batson, then known as Batson Properties, was the owner of the 1015 S. West Street property when this spill occurred.  On information and belief, Paragon was the owner of the building and/or the equipment in the building, including the degreaser and the solvent still, when the spill occurred.  KDHE also has documented reported accounts of other TCE spills which may have occurred at the Batson/Paragon Site, including a catastrophic spill from a degreasing system in November 1988.

22.    KDHE performed a Preliminary Assessment of the Batson/Paragon Site in 1992 and concluded that soil and groundwater at and beneath the site was contaminated by TCE and related hazardous substances.  In August 1993, KDHE issued a consent order (the "1992 Order") to Batson and Paragon finding that the contaminated groundwater was a hazard, or potential hazard, to persons, property, or public health.   The 1992 Order required Defendants to perform a comprehensive investigation and a corrective action study under KDHE regulations to address the release and hazardous substance contamination.

**C.    Hazardous substances released from the Batson/Paragon Site have contaminated groundwater at the ACP Site and downgradient properties.**

23.    Studies of the extent of groundwater contamination from the Batson/Paragon Site

COMPLAINT

and of groundwater contamination observed at downgradient  properties, including the ACP Site, have been completed by or on behalf of KDHE, Batson, Paragon, and AIG Specialty's insureds, including 3P.  These studies have demonstrated that groundwater generally flows to the southeast in this area, and that the migrating plume of contaminated groundwater from the Batson/Paragon Site has reached the ACP Site and downgradient properties southeast of the ACP Site.

24.    Investigation of the Batson/Paragon Site included the testing of groundwater southeast of the Batson/Paragon Site to determine the extent of the contaminated groundwater plume.  In its Final Corrective Action Decision, KDHE noted that the investigation:

> "documented a plume of TCE, cis-1,2-dichloroethylene (cis 1,2-DCE) ground water [sic] contamination emanating from the area near the northeast corner of the Paragon Services, Inc. facility.  The groundwater plume is migrating southeast with groundwater flow and was documented to have commingled with TCE and cis 1,2-DCE groundwater contamination emanating from the Air Capitol Plating Facility. . . ."

Based on the results of Defendants' investigation and corrective action study, in December 2002 KDHE issued an amendment to the 1992 Order (the "2002 Amendment") requiring Paragon to perform a remedial design to address the hazardous substance contamination at the Batson/Paragon Site.  The 2002 Amendment required a remedial action designed to pump and treat groundwater north of the ACP Site to prevent hazardous substances released from the Batson/Paragon Site from *continuing* to migrate to and contaminate the ACP Site and properties downgradient from the ACP Site.  KDHE acknowledged that portions of the Batson/Paragon plume already had migrated to the ACP Site and downgradient properties.

**D.    Environmental response at the ACP Site.**

25.    In 1992, TCE was detected in the groundwater below the ACP Site in concentrations exceeding regulatory standards.  Between 1993 and 1998, KDHE investigated groundwater contamination in the area of and around the ACP Site and the area to the southeast.

COMPLAINT

In particular, KDHE performed an Expanded Site Investigation in 1996. KDHE's work indicated that groundwater contaminated by TCE and related hazardous substances extends from the ACP Site (and from the upgradient Batson/Paragon Site) to properties to the southeast.

26. In 2000, KDHE issued a consent order (the "ACP Site Order") for the ACP Site to Cherokee, an environmental risk transfer company which had contractually assumed responsibility for the hazardous substance contamination at the ACP Site. In the ACP Site Order, KDHE concluded that the contaminated groundwater was a hazard, or potential hazard, to persons, property, or public health.

27. Since 2000, Cherokee and subsequent named insureds under the Policy, including 3P, have performed response work pursuant to the comprehensive investigation and corrective action study required by the ACP Site Order.

28. Among other actions, this work has included environmental sampling and testing at the ACP Site and downgradient properties to characterize potential source areas and the extent and nature of the contaminated groundwater plume, evaluating potential vapor intrusion issues associated with the groundwater contamination, and evaluating potential alternatives for corrective actions to address the groundwater contamination.

29. The investigation has documented that a plume of TCE-contaminated groundwater extends from the Batson/Paragon Site to the ACP Site and continues to the southeast, affecting properties thousands of feet downgradient from the ACP Site.

30. As with the comprehensive investigation, the ultimate remedial action KDHE requires for the ACP Site will address contamination on both the ACP Site and downgradient affected properties.

COMPLAINT

**E.    The response action required for the ACP Site has included work to address hazardous substances from the Batson/Paragon Site, which has resulted in AIG Specialty incurring response costs and will result in AIG Specialty incurring response costs in the future.**

31.    Rather than require Defendants to investigate or remediate the full extent of groundwater contamination caused by releases of hazardous substances from the Batson/Paragon Site, KDHE selected a remedy that stopped at the northern boundary of the ACP Site.  KDHE recognized that its determination did not address the hazardous substances from the Batson/Paragon Site that already had contaminated the ACP Site and downgradient properties, but that contamination would ultimately need to be addressed.  In response to comments on the remedy selection, KDHE stated that the parties could address among themselves, by agreement or through a judgment, liability for the plume of contaminated groundwater at and downgradient of the ACP Site.

32.    Under applicable KDHE requirements and the ACP Site Order, 3P and AIG Specialty's other insureds before it, have been required to investigate and respond to contamination from the Batson/Paragon Site.  Because TCE-contaminated groundwater from the Batson/Paragon Site is commingled with TCE-contaminated groundwater observed beneath the ACP Site and downgradient of the ACP Site, the investigation and remediation of the ACP Site and the downgradient plume has involved, and will involve, investigation of contamination from the Batson/Paragon Site.

**F.    AIG Specialty's coverage for cleanup costs associated with the ACP Site.**

33.    The Policy generally provides cleanup cost cap coverage for costs associated with cleanup of known pollutants (TCE and related hazardous substances) on-site (the ACP Site). The Policy also generally provides coverage for the cleanup of off-site pollutants which originated from the on-site known pollutants (Coverage A).  Further, the Policy provides coverage for the cleanup of unknown pollutants on-site that are discovered during the cleanup of

COMPLAINT

the known pollutants (Coverage B).  All coverages in the Policy are subject to certain limits, risk

allocations, and other terms and conditions.

34.    The Policy contains, in pertinent part, the following subrogation provision in

Section VII.4:

> **Subrogation –** In the event of any payment under this policy, the Company shall
> be entitled to exercise rights of subrogation and the Insured shall execute and
> deliver instruments and papers and do whatever else is necessary to secure such
> rights.  The Insured shall do nothing to prejudice such rights.  The Company will
> act in concert with all other interested parties, including the Insured concerned in
> the exercise of rights or recovery.  The apportioning of any amounts which may
> be so recovered shall follow the principle that any parties, including the Insured,
> that shall have paid an amount over and above any payment hereunder shall first
> be reimbursed up to the amount paid by them.  The Company is then to be
> reimbursed out of any balance then remaining up to the amount paid by it; lastly,
> the parties of whose interests this coverage is in excess, including the Insured, are
> entitled to claim the residue, if any. Expenses incurred in obtaining recoveries
> shall be apportioned among the interests sharing in such recovery in accordance
> with each such interest's proportionate share of the recovery.

35.    As the insurer of the Policy, and pursuant to Section VII.4 thereof, AIG Specialty is

contractually subrogated to claims through which its insureds, including 3P, are or may be

entitled to seek recovery of response costs from Defendants pursuant to CERCLA.  Such claims

include causes of action based on Defendants' responsibility for owning and/or operating

facilities where releases of hazardous substances occurred, resulting in contamination of the ACP

Site.

**G.    AIG Specialty and the insureds under the Policy, including 3P, have incurred
necessary response costs consistent with the NCP.**

36.    The insureds under the Policy, including 3P, have collectively incurred millions of

dollars in costs for actions in response to hazardous substance contamination found at the ACP

Site and downgradient contaminated properties caused, in whole or in part, by contamination

from the Batson/Paragon Site.  These are necessary costs incurred as recently as 2013 for

response actions required by KDHE under applicable environmental regulations and under the ACP Site Order.  The response costs were incurred in a manner consistent with the NCP.

37.    AIG Specialty itself has directly incurred approximately $2.8 million in response costs for claims related to the ACP Site.  These are necessary costs AIG Specialty incurred, in whole or in part, in response to the release of hazardous substances at the upgradient Batson/Paragon Site.  Subject to the terms, conditions, and limits of the Policy, AIG Specialty also has potential exposure for future response costs that its insureds, including 3P, may be obligated to pay.

38.    The millions of dollars in response costs for the ACP Site has been spent on, or is dedicated to, funding actions necessary to prevent damage to the public health or the environment.  These actions include, without limitation:  investigating, monitoring, and evaluating releases or threats of releases; providing alternative water supplies to affected well owners; planning response, removal and remediation actions; investigating, monitoring, and testing a contaminated site; supplemental investigations to support a final corrective action study to select a remedial action; and, in the future, designing and implementing remediation actions and regulatory closure.

39.    These response actions have been conducted (and it is anticipated future response actions will be conducted) under the oversight and review of the State of Kansas, through KDHE, and in accordance with governing KDHE regulations and the specifications of the ACP Site Order, including detailed scopes of work for the comprehensive investigation and corrective action study and KDHE-approved workplans.   KDHE itself performed some of the investigation work, including without limitation a Preliminary Assessment, Site Screening Investigation, and Expanded Site Investigation in cooperation with the United States Environmental Protection Agency.  As such, all activities relating to contamination on, under, and adjacent to the ACP Site

- 11 -

have been conducted (and it is anticipated future response actions will be conducted) in compliance with the requirements of state statutes, regulations, and executive orders governing implementation of remediation, removal, response, clean up, investigation, and abatement. These response actions have been performed in a manner protective of human health and the environment and have been cost effective.

40.    On October 31, 2013, 3P made a written demand upon Batson and Paragon for a sum certain ($2,859,220) for NCP-consistent response costs incurred by the insureds, or on their behalf under the Policy, in response to contamination at the ACP Site caused in whole or in part by Defendants.

## FIRST CLAIM FOR RELIEF

## COST RECOVERY BASED ON DEFENDANTS' OWNER/OPERATOR LIABILITY UNDER CERCLA

41.    AIG Specialty incorporates by reference paragraphs 1 through 40 above, as though fully set forth herein.

42.    Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), provides that any "covered person . . . shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan [the ("NCP")]."

43.    AIG Specialty is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

44.    3P is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

45.    Defendants are each a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

46.    The Batson/Paragon Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

COMPLAINT

47.   The ACP Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

48.   Volatile organic compounds, including TCE and cis-1,2-DCE, discovered at and down-gradient from the Batson/Paragon Facility and the ACP Site are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

49.   During the time that Batson owned the Batson/Paragon Site, disposal of hazardous substances occurred at the Batson/Paragon Site within the meaning of Section 101(29) of CERCLA, 42 U.S.C. § 9601(29).

50.   Releases of hazardous substances have occurred at the Batson/Paragon Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and have caused AIG Specialty and/or its insureds, including 3P, to incur costs in response to those releases.

51.   Paragon Services, Inc., Paragon Properties, LLC, and Batson are each liable under CERCLA as "owners."  Paragon Services, Inc. also is liable under CERCLA as an "operator." An owner or operator includes "any person owning or operating [an onshore facility]," and "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  Sections 107(a)(1) – (2) and 101(20)(A)(ii) under CERCLA, 42 U.S.C. §§ 9607(a)(1) – (2) and 9601(20)(A)(ii).

52.   AIG Specialty, on behalf of itself and as subrogee of its insureds under the Policy, including 3P, has undertaken, and continues to undertake, actions at the ACP Site within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in response to releases or threatened releases of hazardous substances.

53.   The insureds under the Policy, including 3P, have incurred millions of dollars in costs, which constitute "necessary costs of response" incurred in a manner consistent with the NCP under Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B).

54.    AIG Specialty has incurred approximately $2.8 million in costs, which constitute "necessary costs of response" incurred in a manner consistent with the NCP under Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B).

55.    In addition to reimbursing its insured, AIG Specialty has incurred response costs by directly paying contractors performing remediation at the Site on its insureds' behalf.

56.    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. §§ 9607(a), Defendants are each strictly, and jointly and severally, liable, or are otherwise liable as provided by applicable law, to AIG Specialty for cost recovery for all necessary response costs incurred by AIG Specialty itself and/or on its insureds' behalf, including 3P, in the past and in the future, in connection with the ACP Site.

57.    AIG Specialty, on behalf of itself and as subrogee of the insureds under the Policy, including 3P, seeks cost recovery and/or reimbursement from Defendants for all response costs, together with interest thereon, that AIG Specialty has incurred and will incur as a result of the release of hazardous substances from the Batson/Paragon Site into the environment.  AIG Specialty seeks this cost recovery and/or reimbursement based on Defendants' status as owners and/or operators of facilities where hazardous substances and wastes were disposed pursuant to CERCLA, 42 U.S.C. §§ 9607(a).

58.    As a direct and proximate result of Defendants' actions, AIG Specialty is entitled to recover and obtain cost recovery and/or reimbursement for all past, present, and future response costs from Defendants pursuant to CERCLA, 42 U.S.C. § 9607(a).

59.    AIG Specialty also is entitled to interest on the amount recovered on this claim pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

COMPLAINT

## SECOND CLAIM FOR RELIEF

### AIG SPECIALTY'S SUBROGATION ACTION AS AN ALTERNATIVE TO ITS CLAIM FOR COST RECOVERY

60.    AIG Specialty incorporates by reference paragraphs 1 through 59 above, as though fully set forth herein.

61.    Alternative to its direct claim under Section 107(a) of CERCLA, AIG Specialty has a claim in subrogation under CERCLA Section 112(c).

62.    Section 112(c) of CERCLA, 42 U.S.C. § 9612(c)(2), provides that any "person . . . who pays compensation . . . to any claimant for damages or costs resulting from a release of a hazardous substance shall be subrogated to all rights, claims, and causes of action for such damages and costs of removal that the claimant has under this chapter or any other law."  42 U.S.C. § 9612(c)(2).

63.    3P is a "claimant" within the meaning of Section 101(5) of CERCLA, 42 U.S.C. § 9601(5).

64.    3P has made a "claim" within the meaning of Section 101(4) of CERCLA, 42 U.S.C. § 9601(4) because it made a demand in writing to Defendants for payment of response costs in a sum certain prior to the filing of this lawsuit.

65.    AIG Specialty has paid "compensation" in the form of response costs directly to 3P or other insureds and/or directly to remediation contractors on behalf of AIG Specialty's insureds within the meaning of Section 112(c)(2) of CERCLA, 42 U.S.C. § 9612(c)(2).

66.    Pursuant to the Policy and/or common law principles of subrogation, AIG Specialty is contractually and equitably subrogated to 3P's (and the other insureds') rights to seek recovery of response costs from potentially responsible parties, including Defendants.  AIG Specialty also is statutorily subrogated to 3P's (and the other insureds') "rights, claims, and causes of action for . . . damages and costs of removal," under Section 112(c)(2) of CERCLA, 42 U.S.C.

COMPLAINT

§ 9612(c)(2).

67.    AIG Specialty's insureds, including 3P, have a cause of action under Section 107(a)

of CERCLA, 42 U.S.C. § 9607(a).

68.    AIG Specialty has a direct claim under Section 112(c)(2) of CERCLA, 42 U.S.C. §

9612(c)(2), and/or is subrogated under Section 112(c)(2), 42 U.S.C. § 9612(c)(2), to 3P's claims

under Section 107(a), 42 U.S.C. § 9607(a).

69.    AIG Specialty is entitled to recover its response costs pursuant to Section 112(c)(2)

of CERCLA, 42 U.S.C. § 9612(c)(2), as well as to interest on the amount recovered on this claim

in accordance with applicable law.

## THIRD CLAIM FOR RELIEF

## DECLARATORY JUDGMENT ON LIABILITY
## FOR FUTURE RESPONSE COSTS UNDER CERCLA

70.    AIG Specialty incorporates by reference paragraphs 1 through 69 above, as though

fully set forth herein.

71.    Because AIG Specialty contends that Defendants are each responsible for payment

of response costs related to the ACP Site, an actual and substantial controversy exists among

AIG Specialty and Defendants regarding their respective rights and obligations for the response

costs that have been incurred and the response costs that will be incurred to investigate and

remediate the ACP Site.  Until such time as the ACP Site remediation is complete, more

response costs will be needed to respond to contamination at the ACP Site, which was caused in

whole or part by Defendants and the releases or threatened releases at the Batson/Paragon Site.

No adequate or speedy remedy exists for AIG Specialty in the absence of such a judicial

declaration.

72.    Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), AIG Specialty

is entitled to a declaratory judgment against Defendants that will be binding in any subsequent

COMPLAINT

action to recover further response costs incurred by AIG Specialty, on behalf of itself and as its insureds' subrogee, in connection with contamination at the ACP Site.  This determination will prevent a multiplicity of litigation.

## PRAYER FOR RELIEF

WHEREFORE, AIG Specialty demands judgment in its favor and against Defendants as follows:

(1)      ON THE FIRST CLAIM FOR RELIEF, for recovery of past and future response costs incurred at the ACP Site consistent with the NCP, including pre-judgment interest as allowed by law;

(2)      ALTERNATIVELY, ON THE SECOND CLAIM FOR RELIEF, for recovery of past and future response costs incurred at the ACP Site consistent with the NCP, including pre-judgment interest as allowed by law;

(3)      ON THE THIRD CLAIM FOR RELIEF, for a judicial declaration that Defendants are liable for past and future response costs incurred and to be incurred at the ACP Site consistent with the NCP; and

(4)      AS TO ALL CLAIMS FOR RELIEF, all costs and expenses incurred in this action, to the extent provided for by law, post-judgment interest under 28 U.S.C. § 1961, and such other and further relief as the Court may deem just and proper.

COMPLAINT

  s/ Arthur S. Chalmers
Arthur S. Chalmers #11088
HITE, FANNING & HONEYMAN L.L.P.
100 North Broadway, Suite 950
Wichita, Kansas 67202
Telephone:  (316) 265-7741
Facsimile:   (316) 267-7803
E-Mail:  chalmers@hitefanning.com


Scott L. Davis
(*pro hac vice admission pending*)
sdavis@gardere.com
David H. Timmins
(*pro hac vice admission pending*)
dtimmins@gardere.com
Matthew J. Schroeder
(*pro hac vice admission pending*)
mschroeder@gardere.com
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201
(214) 999-3000

Attorneys for Plaintiff
AIG SPECIALTY INSURANCE COMPANY

COMPLAINT